No. 24-4306

IN THE

# United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,
*Appellee,*

v.

CHRISTOPHER CLARK ARTHUR,
*Appellant.*

————————

On Appeal from the United States District Court
for the Eastern District of North Carolina (Dever, J.)

————————

## OPENING BRIEF FOR APPELLANT

————————

G. ALAN DUBOIS
FEDERAL PUBLIC DEFENDER
EASTERN DISTRICT OF NORTH CAROLINA

ANDREW DESIMONE
ASSISTANT FEDERAL PUBLIC DEFENDER
EASTERN DISTRICT OF NORTH CAROLINA
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
(919) 856-4236

December 6, 2024                    *Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION……………………………………………………………………1

STATEMENT OF JURISDICTION ...................................................................... 2

STATEMENT OF ISSUE........................................................................................ 3

STATUTORY BACKGROUND …………………………………………..…….4

STATEMENT OF THE CASE............................................................................... 6

SUMMARY OF ARGUMENT............................................................................... 11

ARGUMENT ........................................................................................................... 12

I. 18 U.S.C. § 842(p)(2)(B) is facially overbroad under the First Amendment because it goes far past punishing incitement and regulates a substantial amount of constitutionally-protected speech……………………………………………………………………12

II. The district court erred by applying the terrorism enhancement where the district court did not find that Mr. Arthur acted with the purpose of promoting a federal crime of terrorism…...………………………………………………………………24

CONCLUSION........................................................................................................ 28

STATEMENT REGARDING ORAL ARGUMENT....................................... 29

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

## CASES

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) ....................................................................................*passim*

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
  511 U.S. 164 (1994) ................................................................................... 20

*Connecticut v. Johnson*,
  460 U.S. 73 (1983) ..................................................................................... 23

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ................................................................................ 11, 13

*Liquormart Inc. v. Rhode Island*,
  116 S. Ct. 1495 (1996) ............................................................................... 21

*Nazario v. Gutierrez*,
  103 F.4th 213 (4th Cir. 2024) ................................................................... 17

*Rice v. Paladin Enterprises, Inc.*,
  128 F.3d 233 (4th Cir. 1997) ............................................................... 11, 19

*United States v. Adepoju*,
  756 F.3d 250 (4th Cir. 2014) ......................................................................24

*United States v. Barnett*,
  667 F.2d 835 (9th Cir. 1982 ....................................................................... 20

*United States v. Barringer*,
  25 F.4th 239 (4th Cir. 2022) ...................................................................... 23

*United States v. Brown*,
  724 F.3d 801 (7th Cir. 2013) ...................................................................... 16

*United States v. Burgos*,
  94 F.3d 849 (4th Cir. 1996) ........................................................................ 30

*United States v. Chandia,*
    675 F.3d 329 (4th Cir. 2012).................................................................. 25

*United States v. Coronado,*
    461 F. Supp. 2d 1209 (S.D. Cal. 2006) ................................................ 15

*United States v. Featherston,*
    461 F.2d 1119 (5th Cir. 1972)......................................................... 18, 19

*United States v. Ferguson,*
    752 F.3d 613 (4th Cir. 2014).................................................................. 23

*United States v. Horton,*
    921 F.2d 540 (4th Cir. 1990).................................................................. 20

*United States v. Kobito,*
    994 F.3d 696 (4th Cir. 2021)....................................................11, 25, 27

*United States v. Liam Collins,*
    *et al.* – E.D.N.C. (7:20-cr-00167-M) .................................................. 17

*United States v. Lindberg,*
    39 F.4th 151 (4th Cir. 2022) ................................................................. 23

*United States v. Miselis,*
    972 F.3d 518 (4th Cir. 2020)........................................................*passim*

*United States v. Stevens,*
    559 U.S. 460 (2010)............................................................................... 12

## STATUTES

18 U.S.C. § 2 .................................................................. 20

18 U.S.C. § 231(a)(1) ............................................. 18, *footnote*

18 U.S.C. § 842(p)(2)(A) ................................................ *passim*

18 U.S.C. § 842(p)(2)(B) ................................................ *passim*

18 U.S.C. § 844(a)(2) ....................................................... 14

18 U.S.C. § 1114 ............................................................. 26

18 U.S.C. § 1363 ............................................................. 27

18 U.S.C. § 2332b(g)(5) ............................................... 25, 26

18 U.S.C. § 3231 ............................................................... 2

18 U.S.C. § 3742 ............................................................... 2

28 U.S.C. § 1291 ............................................................... 2

## SENTENCING GUIDELINES

U.S.S.G. § 3A1.4 ......................................................... 24, 25

## CONSTITUTION

U.S. Const. amend. 1 .................................................... *passim*

## OTHER RESOURCES

A. Valdez, *Gangs Invade the Military*,
Police: The Law Enforcement Magazine,
Vol. 21, Issue 7, 56-58 (July 1997), *summarized at*,
https://www.ojp.gov/ncjrs/virtual-library/abstracts/gangs-invade-military ... 16

Eugene Volokh,
*Freedom of Speech, Permissible Tailoring and Transcending Strict Scrutiny*,
144 U. Penn. L. Rev. 2417 (1996) .......................................................... 13

United States Department of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which its Dissemination is Controlled by Federal Law, and the Extent to Which Such Dissemination May be Subject to Regulation Consistent With The First Amendment to the United States Constitution, available at*,
https://cryptome.org/abi.htm#INTRODUCTION ...................................*passim*

Kent Greenawalt,
*Speech, Crime, and the Uses of Language* (1989),
https://cryptome.org/abi.htm#INTRODUCTION ......................................... 18

## INTRODUCTION

This case raises the first-impression issue of whether 18 U.S.C. § 842(p)(2)(B) is overbroad under the First Amendment. Section 842(p)(2)(B) makes it unlawful to teach, demonstrate, or distribute bombmaking information if such sharing of information is done with mere knowledge (not intent) that an audience member intends to use the information in furtherance of a crime of violence. This offense is substantially overbroad on its face because it punishes speech and expression—that is, teaching, demonstrating, and distributing information—without requiring the government to prove the necessary components of incitement under *Brandenburg*, which are intent, imminence, and likelihood of violence. Because this unconstitutional crime drove the entirety of Mr. Arthur's prosecution, all counts must be vacated.

This case also raises the issue of whether, to apply the terrorism sentencing enhancement under U.S.S.G. § 3A1.4, a district court must find that the defendant either committed or intended to commit a federal crime of terrorism. Here, the district court failed to find that Mr. Arthur intended his crime, which was not itself a federal crime of terrorism, to promote such a crime. The district court therefore erred by applying the 12-level enhancement. If this Court does not vacate the judgment in its entirety, Mr. Arthur must at least be resentenced.

1

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the criminal prosecution pursuant to 18 U.S.C. § 3231. The district court sentenced the Appellant, Christopher Clark Arthur, on May 24, 2024. The district court entered a final judgment on June 6, 2024. Mr. Arthur timely appealed the next day. This Court has jurisdiction over the timely appeal from a final judgment under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I. Whether 18 U.S.C. § 842(p)(2)(B) is facially overbroad under the First Amendment because it goes far past punishing incitement and regulates a substantial amount of constitutionally-protected speech.

II. Whether the district court erred by applying the terrorism enhancement where the district court did not find that Mr. Arthur acted with the purpose of promoting a federal crime of terrorism.

## STATUTORY BACKGROUND

In 1996, Senators Feinstein and Biden proposed legislation that would eventually become 18 U.S.C. § 842(p)(2)(A) and (B). The United States Department of Justice prepared a report discussing the "serious First Amendment problems" raised by Section 842(p)(2)(B), which lacked an intent requirement. *See* United States Department of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which its Dissemination is Controlled by Federal Law, and the Extent to Which Such Dissemination May be Subject to Regulation Consistent With The First Amendment to the United States Constitution*, 47-48, *available at*, https://cryptome.org/abi.htm#INTRODUCTION. Despite the DOJ Report's caution, Congress ultimately chose to adopt the law. This case presents this Court with the first opportunity to decide whether Section 842(p)(2)(B) passes constitutional muster. For the reasons explained, it does not.

The DOJ Report began with the observation that "anyone interested in manufacturing a bomb, dangerous weapon, or a weapon of mass destruction can easily obtain detailed instructions form readily accessible sources, such as legitimate reference books, the so-called underground press, and the Internet." DOJ Report at 1-2. Under the heading, "Dissemination with the 'Knowledge' that a Particular Recipient of the Information Intends to Use It in Furtherance of Unlawful Conduct," the DOJ Report concluded that the proposed Section 842(p)(2)(B) "is not quite as easy from a First Amendment perspective as 'attempted aiding and abetting,' which can constitutionally

be proscribed because it requires a specific purpose to actually assist in the commission of the crime[.]" DOJ Report at 47.

The DOJ Report cited a First Amendment scholar and then discussed "two principal reasons why a 'facilitation through speech' prohibition without an 'intent' requirement would raise serious First Amendment problems." DOJ Report at 47-48. First, it would be "speech-specific," as it "would not prohibit facilitation, as such, but only a speech-related subset of such conduct." DOJ Report at 47. Second, "the First Amendment traditionally has been understood to prohibit the use of the criminal or tort law to punish the dissemination of lawfully obtained factual information absent an impermissible *purpose* for such dissemination[.]" DOJ Report at 48 (emphasis added).

The DOJ Report concluded, "Although the matter is far from certain, in the end we think these First Amendment concerns can be overcome, and that such a facilitation prohibition could be constitutional, if drafted narrowly." DOJ Report at 48. Ultimately, the DOJ Report recommended some modifications to the proposed legislation, DOJ Report at 51-53, which was then modified and adopted by Congress as 18 U.S.C. § 842(p)(2)(B):

> It shall be unlawful for any person … (B) to teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute to any person, by any means, information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, knowing that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence.

# STATEMENT OF THE CASE

*Procedural History*

On March 2, 2022, a federal grand jury in the Eastern District of North Carolina returned a nine-count superseding indictment charging Appellant, Christopher Clark Arthur, with one count of teaching the making or use of explosives knowing that the recipient intended to use the teaching for and in furtherance of a federal crime of violence, seven counts of knowingly receiving and possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, and one count of knowingly possessing a firearm with a removed, altered, or obliterated serial number. JA015-020.

Mr. Arthur filed a motion to dismiss Count 1, arguing Section 842(p)(2)(B) was substantially overbroad under the First Amendment. JA021-031.[1] The government filed a response in opposition, JA122-133, and the district court entered an order denying Mr. Arthur's motion to dismiss. JA134-149.

On July 10, 2023, Mr. Arthur proceeded to trial and renewed his motion to dismiss. JA170. On July 12, 2023, Mr. Arthur was found guilty by the jury of all charges. JA699-701.

---

[1] Mr. Arthur also moved to dismiss Count 1 as unconstitutionally vague and moved to dismiss the remaining counts under the Second Amendment, but does not bring forward those challenges on appeal.

Prior to sentencing, Mr. Arthur filed a sentencing memorandum, a renewed motion to dismiss Count 1 under the First Amendment, a mitigation report, character letters, and a forensic psychological evaluation. JA702-739. The government filed a response in opposition. JA740-764. At sentencing on May 24, 2024, the district court denied the renewed motion to dismiss and sentenced Mr. Arthur to a total of 300 months in prison. JA765-802. On June 6, 2024, the district court entered a written judgment. JA013, JA803-810. Mr. Arthur timely appealed the next day. JA811-812.

*Relevant Factual Background*

In the district court, Mr. Arthur moved to dismiss Count 1 because 18 U.S.C. § 842(p)(2)(B) was substantially overbroad under the First Amendment, on its face and as applied, and attached a transcript of the conversation that formed the basis for Count 1. JA020-121. On appeal, Mr. Arthur brings forward only the facial challenge to 18 U.S.C. § 842(p)(2)(B). He argues the statute is facially overbroad because it punishes speech and expression without requiring the government to prove the necessary components of incitement under *Brandenburg*—intent, imminence, and likelihood. As for Issue II, Mr. Arthur does not challenge the sufficiency of the government's evidence to support the terrorism enhancement. Rather, he argues the district court failed to make the requisite findings. Because Mr. Arthur does not raise an as-applied constitutional claim or challenge the sufficiency of any of the government's evidence at trial or sentencing, the facts of his offense conduct are not relevant to the issues on appeal. Nevertheless, Mr. Arthur briefly summarizes them here.

7

The FBI began investigating Mr. Arthur after searching a home in Richmond, Virginia and finding 11 improvised explosive devices and 6 manuals written by Mr. Arthur for his company, Tackleberry Solutions, including one entitled Quick Reaction Force, Modern Day Minutemen, Improvised Explosives. JA323-324. The manuals included a "[w]arning" that "[t]hese are wartime tactics, not peacetime tactics. Some of these methods may be highly illegal. We do not advocate the use of this knowledge to hurt the innocent. Be sure to know the laws in your area." JA325. The FBI also found electronic communications indicating the person in Richmond traveled to North Carolina for training with Mr. Arthur. JA323.

The FBI decided to have a confidential informant (CI) contact Mr. Arthur for training. JA334. The CI purchased two manuals and a thumb drive containing training videos from Mr. Arthur. JA339-343. The CI also arranged a training session at Mr. Arthur's home. JA349.

At the start of their two-and-a-half-hour conversation at Mr. Arthur's home, the CI told Mr. Arthur the ATF had been to his house and were probably coming back. JA038. Mr. Arthur responded, "You can guaren-damn-tee that[,]" and advised the CI to move. JA038. Mr. Arthur again told the CI he should move. JA041. As for the training, Mr. Arthur said, "We can go lethal or non-lethal and that depends on you. There's so many different things you can do that … the sky's the limit. The biggest thing I'm trying to get you guys to do is with those books is to start to think." JA042.

8

Mr. Arthur said he would teach the CI about a home defense system he built for a friend "called the Spiderweb and it is a freaking death box." JA042. Mr. Arthur looked at a drawing of the CI's property and said "there's no way in hell I would use landmines in this situation. You got other neighbors that are too close and even if everything went to shit, like it's going to here in the next couple of months, and they come over for a cup of sugar, what happens when they trip a landmine." JA045.

Mr. Arthur then discussed staging a vehicle for escape, JA047, communications systems, JA048-051, perimeter defense, JA056-057, using improvised explosives in perimeter defense, JA062-063, JA069, and the "fatal funnel" Spiderweb defense he designed for his friend, which included the use of explosives. JA072, 078-084. The CI responded, "I'm going to have to get some money up before I can do something like that." JA084. Mr. Arthur also discussed the making and use of explosives. JA090-096. Mr. Arthur again advised the CI to spend his money on "relocating and getting land." JA097. He also said, "But you got to make the choice. Solidify and fortify what I got or do I relocate and solidify and fortify that." JA118.

After the meeting, the CI ordered more manuals and arranged to meet Mr. Arthur at a gun show in Raleigh on January 22, 2022, to facilitate his arrest. JA357, JA367. Following Mr. Arthur's arrest, a search of his home revealed the short-barreled rifle, silencer, and destructive devices that formed the basis for Counts 2 through 9 as well as legally-possessed firearms. JA366, JA368, JA420-422.

Mr. Arthur testified about his military service and deployments, his family farm, and the creation of his company, Tackleberry Solutions. JA539-541, JA543. He started it as a military gear company. JA543. But around 2018, he felt the federal government was heading towards collapse and changed the company's focus to training average people to defend themselves and their homes in the event of that collapse and ensuing war. JA546-547, JA549, JA551, JA555-556. Mr. Arthur testified the CI never conveyed he was trying to kill federal agents. JA555. He denied that he ever advocated the overthrow of any government or the murder of federal agents. JA569-570.

Prior to sentencing, the United States Probation Office prepared a presentence report recommending a 12-level enhancement because "[t]he offense is a felony that involved, or was intended to promote, a federal crime of terrorism[.]" JA827. Mr. Arthur objected to application of the terrorism enhancement and the probation officer rejected his objections. JA831-833.

At sentencing, the district court denied Mr. Arthur's renewed motion to dismiss Count 1 as overbroad. JA772. The district court found the terrorism enhancement applied, JA773-777, and sentenced Mr. Arthur to a total of 300 month in prison. JA798.

## SUMMARY OF ARGUMENT

"[A] right to advocate lawlessness is, almost paradoxically, one of the ultimate safeguards of liberty." *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 243 (4th Cir. 1997). 18 U.S.C. § 842(p)(2)(B) is a presumptively-invalid, content-based restriction on speech. It criminalizes sharing specified content—*i.e.,* information about bombmaking—with knowledge, but not intent, that the recipient intends to use the information in furtherance of a crime of violence. Under the *Brandenburg* test for incitement, "the First Amendment precludes punishment [for advocacy of lawlessness], whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman v. Colorado*, 600 U.S. 66, 76 (2023). Section 842(p)(2)(B) is substantially overbroad on its face because it punishes speech and expression without requiring the government to prove the necessary components of incitement under *Brandenburg*—intent, imminence, and likelihood. It is therefore facially unconstitutional.

To apply the draconian terrorism enhancement under U.S.S.G. § 3A1.4, a district court must find that the defendant either committed or intended to commit a federal crime of terrorism. *See United States v. Kobito*, 994 F.3d 696, 702-703 (4th Cir. 2021). But here, neither the jury's verdict nor the district court's findings at sentencing established the necessary predicates for application of the enhancement. Thus, if this Court does not vacate the judgment pursuant to Issue I, it must nonetheless reverse and remand for resentencing.

## ARGUMENT

**I. 18 U.S.C. § 842(p)(2)(B) is facially overbroad under the First Amendment because it goes far past punishing incitement and regulates a substantial amount of constitutionally-protected speech.**

*Standard of Review*

This Court should review *de novo* whether 18 U.S.C. § 842(p)(2)(B) violates the First Amendment. *United States v. Miselis*, 972 F.3d 518, 525 (4th Cir. 2020).

*Argument*

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech[.]" U.S. Const. amend. 1. "'[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citation omitted).

18 U.S.C. § 842(p)(2)(B) "explicitly regulates expression based on content[.]" *Stevens*, 559 U.S. at 468. It restricts "teach[ing,]" "demonstrat[ing,]" and "distribut[ing] … information" pertaining to specific content—that is, the making, use, or manufacture of an explosive, destructive device, or weapon of mass destruction. 18 U.S.C. § 842(p)(2)(B). Because it is a content-based restriction on speech, Section 842(p)(2)B) is "presumptively invalid, and the Government bears the burden to rebut that presumption." *Stevens*, 559 U.S. at 468 (cleaned up). It cannot carry that burden.

Since the founding, "the First Amendment has permitted restrictions upon the content of speech in a few limited areas." *Id.* (cleaned up). These historic and traditional

categories "are 'well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem[.]'" *Id.* at 468-469 (citation omitted).

"A glance at [Section 842(p)(2)(B)] reveals that the category of unprotected speech that lies at the core of the statute's prohibition is that which also lies at the origin of First Amendment jurisprudence: 'incitement.'" *United States v. Miselis*, 972 F.3d 518, 532 (4th Cir. 2020). Incitement consists of "statements 'directed [at] producing imminent lawless action,' and likely to do so." *Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (*per curiam*)). "*Brandenburg* effectively operates as an even stricter stand-in for strict scrutiny when it comes to regulating 'advocacy of illegal conduct.'" *Miselis*, 972 F.3d at 533 n.6 (quoting Eugene Volokh, *Freedom of Speech, Permissible Tailoring and Transcending Strict Scrutiny*, 144 U. Penn. L. Rev. 2417, 2445 n.114 (1996)).

Thus, under *Brandenburg*, "the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman*, 600 U.S. at 76. "That rule helps prevent a law from deterring 'mere advocacy' of illegal acts—a kind of speech falling within the First Amendment's core." *Id.*

"In the First Amendment context, … the fear of chilling protected expression 'has led courts to entertain facial challenges based merely on hypothetical applications of the law to nonparties.'" *Miselis*, 972 F.3d at 530 (citation omitted). Pursuant to this

kind of facial overbreadth challenge, "a statute 'may be invalidated as overbroad' as long as 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.*

Section 842(p)(2)(B) is substantially overbroad because it punishes speech and expression without requiring the government to prove the necessary components of incitement under *Brandenburg*—intent, imminence, and likelihood.

Specifically, Section 842(p)(2)(B) subjects speakers to twenty years in prison for teaching, demonstrating, or distributing information about the making, use, or manufacture of explosives by any means to any person with mere "*know*[*ledge*] that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence." § 842(p)(2)(B) (emphasis added); 18 U.S.C. § 844(a)(2). Mere knowledge that another person intends to commit violence does not establish that the speaker's words "were '*intended*' (not just likely) to produce imminent disorder." *Counterman*, 600 U.S. at 76 (emphasis added).

By sharp contrast, Section 842(p)(2)(A), which is not at issue in this case, requires a higher *mens rea* of "*intent* that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence[.]" 18 U.S.C. § 842(p)(2)(A) (emphasis added). The "intent" requirement in Section 842(p)(2)(A) ensures that a defendant's words are "'*directed* [*at*] producing imminent lawless action,'" satisfying the *Brandenburg* standard for incitement. *Counterman*, 600 U.S. at 73 (quoting *Brandenburg*, 395 U.S. at 447)). Thus, Section 842(p)(2)(A) may very well be

14

constitutional. Consequently, the district court's reliance on *United States v. Coronado*, 461 F. Supp. 2d 1209 (S.D. Cal. 2006), which rejected a facial overbreadth challenge to that statute, is unavailing. JA141. Indeed, *Coronado* repeatedly emphasized that under Section 842(p)(2)(A), "[i]t is only when the teaching or demonstration of a destructive device is coupled with the *specific intent to commit a federal crime of violence* that an individual runs afoul of the statute." *Id.* at 1213.

The speech outlawed by Section 842(p)(2)(B) also fails the *Brandenburg* test because it is not "likely to produce imminent lawlessness." *Miselis*, 972 F.3d at 533. In *Miselis*, this Court analyzed the Anti-Riot Act, which makes it unlawful to "encourage" or "promote" a riot, as well as to "urg[e]" others to riot. *Id.* at 536. This Court held that speech tending to encourage, promote, or urge others to riot "fail[ed] to bear the requisite relation between speech and lawlessness." *Id.* Specifically, this Court held, "Speech tending to encourage a riot … encompasses *all* hypothetical efforts to advocate for a riot, including the vast majority that aren't *likely* to produce an *imminent* riot (even assuming they're *directed* to producing a riot)." *Id.* Similarly, this Court held the term "promote" "suffers from the same overbreadth, subsuming an abundance of hypothetical efforts to persuade that aren't likely to produce an imminent riot." *Id.* And this Court held the verb "urging" also failed to bear an adequate relation between speech and lawless action. *Id.* at 538.

Similarly, nothing in the text of Section 842(p)(2)(B) requires the outlawed speech to be *likely* to produce *imminent* lawlessness. The statute outlaws teaching or

demonstrating the making or use of explosives, etc. or distributing "to any person, by any means, information pertaining to, in whole or in part, the manufacture or use" of such devices. § 842(p)(2)(B). And the statute only requires that the teacher know the student intends to use the information "for, *or in furtherance of*, an activity that constitutes a Federal crime of violence." § 842(p)(2)(B) (emphasis added). "The statutory term 'in furtherance of' is unavoidably rather vague[,]" and applies to anything that makes a crime "likelier[.]" *United States v. Brown*, 724 F.3d 801, 803 (7th Cir. 2013). The breadth of the "in furtherance of" clause fails to limit application of the section to circumstances in which violence is likely to be imminent. Accordingly, Section 842(p)(2)(B) fails the *Brandenburg* requirements for this reason as well.

In sum, the lack of an intent requirement and the breadth of the "in furtherance clause" mean that "a substantial number of [Section 842(p)(2)(B)'s] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Miselis*, 972 F.3d at 530 (citation omitted). For example, even the government recognizes that "explosives manufacturers" and "the military" legitimately teach and publish bombmaking information. DOJ Report at 40, *available at*, https://cryptome.org/abi.htm#INTRODUCTION. But unfortunately, "military installations can be affected by the gang phenomenon," with the result that "knowledge of munitions storage, use and disposal have all been taken from the military, some illegally, some legally." A. Valdez, *Gangs Invade the Military*, Police: The Law Enforcement Magazine, Vol. 21, Issue 7, 56-58 (July 1997), *summarized at*,

https://www.ojp.gov/ncjrs/virtual-library/abstracts/gangs-invade-military.      More

recently, military members have been prosecuted for being members of violent

extremist groups. *E.g.*, *United States v. Liam Collins, et al.* – E.D.N.C. (7:20-cr-00167-M).

Section 842(p)(2)(B) should chill military instructors' willingness to teach necessary

information out of fear that, if any class member is later revealed to be a member of a

gang or extremist group, the instructor could be prosecuted under that statute.

But the statute reaches far beyond explicitly teaching the making or use of

explosives. If it is a federal crime to share information with mere knowledge that an

audience member intends to (at any time) use the information being shared in

furtherance of a crime of violence, physics teachers may well refrain from teaching their

students basic concepts related to explosions, and military instructors may decline to

perform their jobs.

For example, if a student in a physics class wore a t-shirt advocating violence

against the government—such as "Revenge for Ruby Ridge!"—the teacher might worry

that the student would use that information to commit violence. Since probable cause

is a "low bar," *Nazario v. Gutierrez*, 103 F.4th 213, 229 (4th Cir. 2024), teachers may

worry that teaching basic physics concepts to a class in which they have any suspicion

of any class-members' intentions would expose them to federal prosecution.

Moreover, Section 842(p)(2)(B) would punish the teacher even if the student did

not intend to commit violence for another year or two or ten—for the statute does not

restrict convictions to situations in which the teacher knows that the audience member

intends to imminently use the information in furtherance of a crime of violence. The statute would also expose a teacher to prosecution if there is probable cause to believe the teacher knew the student may pass the information along to another person who may use it to commit violence, as this would constitute an act in furtherance of a crime of violence.

As these examples illustrate, by failing to limit criminality to circumstances in which violence is intended, imminent, and likely—as required by *Brandenburg*—Section 842(p)(2)(B) covers a substantial amount of constitutionally-protected speech. And as the government itself recognized in its report on the law, "'If people become aware that they can be treated as criminal for providing information they believe will aid a crime, they may be hesitant to give information when they think there is some modest chance of criminal use, not trusting that prosecutors and jurors will always be discerning about perceptions of relevant probabilities." DOJ Report at 47 (quoting Kent Greenawalt, S*peech, Crime, and the Uses of Language* 86-87 (1989)), *available at*, https://cryptome.org/abi.htm#INTRODUCTION)).

The district court rejected Mr. Arthur's challenge primarily in reliance on *United States v. Featherston*, 461 F.2d 1119 (5th Cir. 1972), rejecting overbreadth and vagueness challenges to 18 U.S.C. § 231(a)(1).[2] But in *Featherston*, the district court required the

---

[2] 18 U.S.C. 231(a)(1) makes it criminal for any person to "teach[] or demonstrate[] to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for

jury to find the defendants both "knew *and intended*" that their teachings would be used "in, or in furtherance of, a civil disorder." *Featherston*, 461 F.2d at 1122 (emphasis added). That instruction stands in stark contrast to the statute and instructions here, which permitted conviction upon a finding of mere knowledge of another's intent.

*Featherston* is also distinguishable because it addressed and decided a different issue, holding only that "there was a sufficient showing of *clear and present danger* to justify governmental intervention and the prosecution of appellants for teaching the use and manufacture of explosives and incendiary devices[.]" *Id.* at 1122-1123 (emphasis added). But the now-abrogated "clear-and-present-danger test applied to a wide range of advocacy that now finds refuge under *Brandenburg*[,]" because it was "[d]evoid of any such limiting criteria as directedness, likelihood, or imminence[.]" *Miselis*, 972 F.3d at 533. Moreover, as the government itself recognized in its report on the law, *Featherston* contains only "cursory analysis" of the First Amendment issue. DOJ Report at 29, *available at*, https://cryptome.org/abi.htm#INTRODUCTION. Indeed, *Featherston* never even cites *Brandenburg* and therefore cannot guide the way. *Featherston*, 461 F.2d at 1119-1123.

The district court also erred by holding that, as in *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 242 (4th Cir. 1997), "section 842(p)(2)(B) more closely resembles a

---

use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function[.]"

criminal aiding and abetting statute." JA142. Aiding and abetting liability attaches only when a person participates in another's crime with "knowledge of the result *and intent to bring about that result.*" *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (cleaned up) (emphasis added); *see Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 181 (1994) (recognizing that 18 U.S.C. § 2 "decrees that those who provide knowing aid to persons committing federal crimes, *with the intent to facilitate the crime*, are themselves committing a crime."). Thus, aiding and abetting's intent requirement would satisfy *Brandenburg*'s requirement that the speech be "'intended' (not just likely) to produce imminent disorder." *Counterman*, 600 U.S. at 76. But mere knowledge under Section 842(p)(2)(B) satisfies neither intent under *Brandenburg* nor the intent required for aiding and abetting liability.

Aiding and abetting liability also applies only when the underlying crime was actually "committed by someone." *United States v. Horton*, 921 F.2d 540, 543-544 (4th Cir. 1990) (cleaned up); *see United States v. Barnett*, 667 F.2d 835, 842 (9th Cir. 1982) ("Barnett cannot be guilty of aiding and abetting Agent Sherrington in the commission of a crime, i.e., the attempt to manufacture phencyclidine since that crime was not committed by Agent Sherrington."). But Section 842(p)(2)(B) does not require the recipient of the information to *commit* a federal crime of violence. It requires only that the defendant *know* the recipient *intends* to use the information in furtherance of such an offense.

20

*Rice* merely held that "speech, which, in its effect, is tantamount to legitimately proscribable nonexpressive conduct, may itself be legitimately proscribed, punished, or regulated *incidentally to the constitutional enforcement of generally applicable statutes*." *Rice*, 128 F.3d at 243 (emphasis added). But Section 842(p)(2)(B) is not a generally applicable statute, which only incidentally touches on speech. Instead, as the government itself recognizes, Section 842(p)(2)(B) is "speech-specific[,]" and "'[t]he text of the First Amendment makes clear that the Constitution presumes that attempts to regulate speech are more dangerous than attempts to regulate conduct.'" DOJ Report at 47, 48, *available at*, https://cryptome.org/abi.htm#INTRODUCTION (quoting *44 Liquormart Inc. v. Rhode Island*, 116 S. Ct. 1495, 1512 (1996) (plurality opinion)).

Furthermore, *Rice* drew the line for imposing liability at specific intent, not knowledge. In *Rice*, this Court held that "the First Amendment may, at least in certain circumstances, superimpose upon the speech-act doctrine a heightened intent requirement in order that preeminent values underlying that constitutional provision not be imperiled." *Id.* at 247. "That is, in order to prevent the punishment or even the chilling of entirely innocent, lawfully useful speech, the First Amendment may in some contexts stand as a bar to the imposition of liability on the basis of mere foreseeability or knowledge that the information one imparts could be used for an impermissible purpose." *Id.* at 247. Thus, *Rice* supports striking down Section 842(p)(2)(B) as unconstitutional.

In sum, Section 842(p)(2)(B) categorically fails to meet the *Brandenburg* test (as well as the aiding and abetting test) because it permits conviction upon mere knowledge rather than intent, and does not require the government to prove imminence and likelihood of violence. Thus, it criminalizes constitutionally protected speech, and the "areas of overbreadth cover the whole realm of advocacy that *Brandenburg* protects, and dwarf[] that which it left unprotected." *Miselis*, 972 F.3d at 541.  In other words, by criminalizing sharing certain information with mere knowledge that an audience member intends at some point to use the information in furtherance of a crime of violence, the statute facially violates the First Amendment and must be struck down.[3]

Unlike Section 842(p)(2)(B) at issue here, the immediately preceding section, 842(p)(2)(A), requires the government to prove that the teacher shared the information intending that it would be used to further crimes of violence.  Thus, striking down the statute at issue here would leave the government free to prosecute when there is probable cause to believe that the teacher intended to further crimes of violence. Because Section 842(p)(2)(B) lacks any of the limitations required by *Brandenburg* and thus criminalizes constitutionally protected speech, it is unconstitutional under the First Amendment.

Once one or more errors have been established, the question becomes whether those errors prejudiced the defendant and, if so, to what extent. Thus, the prejudice

---

[3] Because the constitutional infirmities infect the entirety of Section 842(p)(2)(B), they are not severable.

inquiry requires an analysis of each conviction. *See United States v. Barringer*, 25 F.4th 239, 247 (4th Cir. 2022).

Constitutional errors require reversal of all convictions unless the Government proves they are harmless beyond a reasonable doubt as to any specific conviction. *See, e.g., United States v. Ferguson*, 752 F.3d 613, 618 (4th Cir. 2014). Only in "rare situations in which the reviewing court can be confident that a [constitutional] error did not play any role in the jury's verdict" can such an error not require vacating all counts. *Connecticut v. Johnson*, 460 U.S. 73, 87 (1983); *see also United States v. Lindberg*, 39 F.4th 151, 164 (4th Cir. 2022) (applying *Johnson* and vacating all counts).

Prejudice exists where "evidence admitted to support a reversed count prejudiced the remaining counts." *Barringer*, 25 F.4th at 247 (cleaned up). For example, where "the challenged evidence would have been inadmissible without the [erroneous] counts," and where that evidence was prejudicial to other counts, the other counts must be dismissed. *Id.* at 247-48.

That test is met here. Quite simply, the jury erroneously heard voluminous evidence and instructions supporting the government's position that Mr. Arthur "*knew* that the person he was instructing intended to commit an act constituting the murder or attempted murder of federal law enforcement." JA536-537, JA565. The government also introduced numerous exhibits to prove that knowledge. But the jury would not have heard any of that evidence but for the district court's erroneous refusal to dismiss Count 1. Moreover, that evidence was highly prejudicial to all of the other counts, each

23

of which required the Government to prove different forms of guilty knowledge. JAA539-548, JA565-567. Therefore, vacatur of all counts is required.

**II. The district court erred by applying the terrorism enhancement where the district court did not find that Mr. Arthur acted with the purpose of promoting a federal crime of terrorism.**

*Standard of Review*

In determining whether a district court properly applied a sentencing enhancement under the Guidelines, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014). "Where a Guidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the circumstances at issue." *Id.*

*Argument*

The jury's guilty verdict on Count 1 under 18 U.S.C. § 842(p)(2)(B) established only that Mr. Arthur "*knew* that the person he was instructing intended to commit an act constituting the murder or attempted murder of federal law enforcement." JA536-537, JA565. The jury's verdict did not establish that Mr. Arthur *intended* for the person he was instructing to commit such an act because he was not charged with, nor convicted of, violating 18 U.S.C. § 842(p)(2)(A).

U.S.S.G. § 3A1.4(a) provides, "If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by **12** levels; but if the resulting offense level is less than level **32**, increase to level **32**." Subsection (b) provides

24

that "[i]n each such case, the defendant's criminal history category from Chapter Four … shall be Category VI." U.S.S.G. § 3A1.4(b).

The application notes establish that "'*federal crime of terrorism*' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4(a) cmt. n.1. Section 2332b(g)(5), in turn, states that "the term 'Federal crime of terrorism' means an offense that—(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of" an enumerated list of offenses. 18 U.S.C. § 2332b(g)(5). The enumerated list does not contain Mr. Arthur's offense of conviction, Section 842(p)(2)(B). However, it does contain Section "1114 (relating to killing or attempted killing of officers and employees of the United States)[.]" 18 U.S.C. § 2332b(g)(5)(B).

In *United States v. Kobito*, 994 F.3d 696 (4th Cir. 2021), this Court held, "The dictionary defines 'involve' as 'to have within or as part of itself.'" *Id.* at 702. Thus, "The 'involve' prong" of U.S.S.G. § 3A1.4(a) "suggests that the predicate offense and related conduct must include a federal crime of terrorism." *Id.* (citing *United States v. Chandia*, 675 F.3d 329, 331-32 (4th Cir. 2012) (applying the terrorism enhancement to a defendant convicted of a terrorism offense listed in 18 U.S.C. § 2332b(g)(5)). Because Kobito's crime of conviction—possessing unregistered silencers—did not include a federal crime of terrorism, his offense did not involve such a crime.

This Court further held, "But the use of the disjunctive means that 'the "intended to promote" prong must be applicable in some circumstances when the "involved"

prong is not, *i.e.,* where the defendant's offense or relevant conduct does *not* include a federal crime of terrorism.'" *Id.* at 702. The Court held that "the ordinary meaning of the 'intended to promote' prong is that the enhancement applies whenever the defendant commits a felony with 'a goal or purpose … to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)[.]'" *Id.* (citation omitted).

Here, the district court concluded, "Because Count 1, I think, involves distributing information knowing that it would be used to murder, attempt to murder an officer or employee of the United States in violation of 18 U.S.C., Section 1114, the conviction does involve a crime of terrorism." JA641. But Count 1 did not involve a crime of terrorism because it did not include a federal crime of terrorism. Rather, Count 1 included Mr. Arthur's mere *knowledge* that someone else "intended to commit an act constituting the murder or attempted murder of federal law enforcement." JA536-537, JA565. Thus, the district court erred by holding that Count 1 involved a federal crime of terrorism.

The district court further held, "Alternatively, even if it did not 'involve' a crime of terrorism under 3A1.4, the defendant's conviction under 18 U.S.C., Section 842(p)(2)(B) in Count 1 also warrants the application of 3A1.4" because it "applies where the promotion of an enumerated offense was at least one purpose or goal of the defendant's offense of conviction or was intended to promote or help bring about or encourage or contribute to such an enumerated offense." JA641. As to that prong, the district court found, "The defendant was encouraging and contributing to the murder

or attempted murder of the federal law enforcement officers[,]" and he "reasonably foresaw the use of the tactics to kill ATF agents." JA642.

But this Court has held that "it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered." *Kobito*, 994 F.3d at 703 (cleaned up). As applied in *Kobito*, this Court held the district court was required to find that Kobito committed the "crime of conviction (possessing unregistered silencers) with the intent to promote 'willful[] and malicious[] destr[uction] of property under federal jurisdiction, 18 U.S.C. § 1363, and in a manner that was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct[.]'" *Id.*

In *Kobito*, the district court made those two required findings. *Id.* But here, the district court made only one of them. Specifically, the district court found that Mr. Arthur's "purpose, among others, in teaching the confidential human source about how to make IEDs was to effect the conduct of Government by coercion and to retaliate against Government conduct." JA642. But crucially, the district court never made the requisite finding that Mr. Arthur *intended* for his teaching to be used to kill ATF agents. JA639-644.

The district court was just wrong in concluding, "I think the requisite mens rea was found by the jury[.]" JA642. It was not. Again, the jury verdict established only Mr. Arthur's *knowledge* that someone else intended to kill ATF agents, not that Mr. Arthur had that intent. The district court therefore erred by concluding that Mr. Arthur's

offense involved or was intended to promote a federal crime of terrorism and by applying the enhancement.

Without the draconian terrorism enhancement, Mr. Arthur's adjusted offense level would have been 35, his criminal history category would have been I, and his guidelines range would have been 168-210 months. JA688, JA693. But the erroneous application of the terrorism enhancement yielded an advisory guidelines range of life without parole, which became 1,140 months because of the statutory maximums. The erroneous application of the terrorism enhancement therefore severely prejudiced Mr. Arthur. This Court should reverse and remand for resentencing.

## CONCLUSION

For the foregoing reasons, this Court should vacate the judgment or alternatively, remand Mr. Arthur's case for resentencing.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Arthur requests oral argument.

Respectfully submitted,

G. ALAN DUBOIS
FEDERAL PUBLIC DEFENDER

/s/ *Andrew DeSimone*
ANDREW DESIMONE
ASSISTANT FEDERAL PUBLIC DEFENDER
EASTERN DISTRICT OF NORTH CAROLINA
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
(919) 856-4236

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,311 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Garamond font.

/s/ Andrew DeSimone
Andrew DeSimone