No. 24-4306

IN THE

# United States Court of Appeals for the Fourth Circuit

UNITED STATES,

*Plaintiffs-Appellees*,

v.

CHRISTOPHER CLARK ARTHUR,

*Defendant-Appellant*.

On Appeal from the United States District Court for the
Eastern District of North Carolina, Wilmington Division
Honorable United States District Judge, James C. Dever, III
Criminal No. 7:22-cr-000005-D-1

## PETITION FOR REHEARING EN BANC

G. ALAN DUBOIS
ANDREW DESIMONE
OFFICE OF THE FEDERAL PUBLIC
DEFENDER, EASTERN DISTRICT OF
NORTH CAROLINA
150 Fayetteville Street
  Suite 450
Raleigh, N.C. 27601
Andrew_DeSimone@fd.org

JO-ANN TAMILA SAGAR
DELIA SCOVILLE
COLBY DICKINSON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
Jo-Ann.Sagar@hoganlovells.com

December 17, 2025                    *Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION AND RULE 40(b) STATEMENT ................................................ 1

STATEMENT OF THE CASE .................................................................................. 3

    A.    Statutory Background ................................................................................. 3

    B.    Factual Background and Prior Proceedings ......................................... 4

ARGUMENT ............................................................................................................. 6

    I.    THE PANEL DECISION IS WRONG AND REHEARING IS
        WARRANTED TO CORRECT THE PANEL'S NOVEL AND
        DANGEROUS ERROR ...................................................................... 6

        A.    The Panel Decision Conflicts With Supreme Court Precedent
            Requiring Criminal Intent To Exempt Speech From First
            Amendment Protection ...................................................................... 7

        B.    Section 842(p)(2)(B) Is Facially Overbroad Because The Statute
            Prohibits A Substantial Amount Of Protected Speech As
            Compared To Its Legitimate Scope ................................................. 9

        C.    The Statute Cannot Be Construed As An Aiding And
            Abetting Law ................................................................................... 12

    II.    THE PANEL DECISION CREATES AN INTRA- AND INTER-
        CIRCUIT CONFLICT AND REHEARING IS WARRANTED
        TO RESTORE UNIFORMITY IN THE COURTS OF APPEALS ........ 13

        A.    The Panel Decision Conflicts With This Court's Precedent
            Regarding The Necessity of Intent ................................................. 13

        B.    The Panel Decision Conflicts With Decisions Of Other
            Federal Courts Of Appeals .............................................................. 14

    III.    OTHER FACTORS FAVOR GRANTING FURTHER REVIEW ......... 16

i

## TABLE OF CONTENTS–Continued

Page

CONCLUSION ...................................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

ii

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Adderley v. State of Fla.*,
   385 U.S. 39 (1966)..................................................................................9

*Beaty v. Schriro*,
   509 F.3d 994 (9th Cir. 2007) ..............................................................10

*Counterman v. Colorado*,
   600 U.S. 66 (2023)...............................................................................16

*Friend v. Gasparino*,
   61 F.4th 77 (2d Cir. 2023) ...............................................................2, 15

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949)...........................................................................2, 7

*Illinois v. Gates*,
   462 U.S. 213 (1983)..............................................................................10

*Ocasio v. United States*,
   578 U.S. 282 (2016)................................................................................7

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)................................................................................6

*Rice v. Paladin Enters., Inc.*,
   128 F.3d 233 (4th Cir. 1997) ........................................................2, 13, 14

*Rosemond v. United States*,
   572 U.S. 65 (2014)............................................................................12, 13

*Round v. Boeing N. Am. Servs.*,
   No. 98-2344, 1999 WL 417452 (4th Cir. June 23, 1999) .................10

*United States v. Arthur*,
   No. 7:22-CR-5-D, 2023 WL 12195529 (E.D.N.C. Jan. 17, 2023)......5

iii

# TABLE OF AUTHORITIES–Continued

Page(s)

*United States v. Arthur*,
___ F.4th ___, 2025 WL 3466639 (4th Cir. Dec. 3, 2025) ..............................4, 5

*United States v. Boyd*,
924 F.2d 945 (9th Cir. 1991) ..................................................................10

*United States v. Coronado*,
461 F. Supp. 2d 1209 (S.D. Cal. 2006) .................................................11

*United States v. Dellinger*,
472 F.2d 340 (7th Cir. 1972) .............................................................9, 10

*United States v. Freeman*,
761 F.2d 549 (9th Cir. 1985) ..................................................................15

*United States v. Hansen*,
599 U.S. 762 (2023).................................................................1, 2, 7, 8

*United States v. Huff*,
630 F. App'x 471 (6th Cir. 2015) ...........................................................9

*United States v. Khan*,
937 F.3d 1042 (7th Cir. 2019) ..............................................................10

*United States v. Rundo*,
990 F.3d 709 (9th Cir. 2021) ..................................................................15

*United States v. Stevens*,
559 U.S. 460 (2010)................................................................................11

*United States v. White*,
610 F.3d 956 (7th Cir. 2010) ..................................................................15

*United States v. Williams*,
553 U.S. 285 (2008).............................................................................8, 13

**STATUTES:**

18 U.S.C. § 842(p)(2)(A) ...............................................................3, 11

**TABLE OF AUTHORITIES–CONTINUED**

Page(s)

18 U.S.C. § 842(p)(2)(B) ...............................................................................*passim*

Pub. L. No. 104-132, tit. VI, § 603, 110 Stat. 1214 (1996) .......................................4

**RULES:**

Fed. R. App. P. 40(b)(2)(A) ....................................................................................13

Fed. R. App. P. 40(b)(2)(B) ......................................................................................7

Fed. R. App. P. 40(b)(2)(C) ....................................................................................13

Fed. R. App. P. 40(b)(2)(D) ....................................................................................16

**LEGISLATIVE MATERIAL:**

S. Amdt. 4428 to S. 1745, 104th Cong. (June 28, 1996) ...........................................3

**OTHER AUTHORITIES:**

United States Dep't of Justice, *Criminal Resource Manual* § 2474, *Elements of Aiding and Abetting*, https://perma.cc/ZK2V-N4MZ.......................................12

United States Dep't of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which Its Dissemination Is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent with the First Amendment to the United States Constitution* (1997) ...........................................................................................3

**INTRODUCTION AND RULE 40(b) STATEMENT**

A divided Panel of this Court has upheld a statute, 18 U.S.C. § 842(p)(2)(B), that makes it unlawful to "teach," "demonstrate," or "distribute" information "pertaining to" a destructive device—even if the speaker has purely innocent motives for that speech—if the speaker "know[s]" that someone listening intends to use that information "in furtherance of" a violent crime. This statute makes it a crime for a physics professor to teach a class on thermodynamics if one of her students is wearing a t-shirt with a violent slogan. This statute makes it a crime for a contractor to use a controlled explosion to clear a roadway if he knows that the protestors across the street are willing to do more than chain themselves to the trees. This statute makes it a crime for a veteran to talk about her wartime experiences in group therapy if she knows that one of the other patients is struggling with violent thoughts. All such speakers are criminals, even though the speaker himself does not intend—and may even discourage—the listener's planned crime.

The Panel's decision is the first Court of Appeals decision to consider the constitutionality of § 842(p)(2)(B), but the Panel's decision is not merely unprecedented; it runs *counter* to decades of Supreme Court precedent. The Supreme Court has repeatedly explained that speech is protected—even if the information conveyed could be used in the commission of a crime—unless the speaker himself has criminal intent. *See, e.g.*, *United States v. Hansen*, 599 U.S. 762,

1

771 (2023). This Court's sister circuits have heeded that instruction. *See, e.g.*, *Friend v. Gasparino*, 61 F.4th 77, 89 (2d Cir. 2023). Until now, this Court did, too. *See, e.g.*, *Rice v. Paladin Enters., Inc.*, 128 F.3d 233 (4th Cir. 1997).

The Panel broke that rule in rejecting Arthur's overbreadth challenge to § 842(p)(2)(B). The Panel majority *conceded* that the statute does not require any "sort of specific intent to commit an underlying crime," yet nevertheless held that the innocent speech covered by the statute is "unprotected" because *the speaker's* innocent speech is "integral to" *the listener's* "criminal conduct." Slip Op. 6-8. That view is novel and wrong. To be sure, the First Amendment does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). But that exception has never before been understood to eliminate the requirement that *the speaker* must also have criminal intent. Even with respect to speech integral to criminal conduct like solicitation, aiding and abetting, and conspiracy, courts have *always* insisted that those crimes "require an intent to bring about a particular unlawful act"—not mere knowledge that the unlawful act will occur. *Hansen*, 599 U.S. at 771. In short, "this statute brings the First Amendment into new territory, where speech is prohibited not because of the intent of the speaker, but because of the intent of the listener." Slip Op. 15 (Gregory, J., dissenting).

Because the Panel majority's analysis of § 842(p)(2)(B)'s overbreadth does

2

not accord with Supreme Court guidance, the decisions of other courts, and this Court's own prior decisions, and because this case presents a question of exceptional importance, this Court should grant rehearing en banc and reverse the Panel's judgment.

## STATEMENT OF THE CASE

### A.      Statutory Background

In 1996, Senators Feinstein and Biden proposed legislation that would become 18 U.S.C. § 842(p)(2)(A) and (B). S. Amdt. 4428 to S. 1745, 104th Cong. (June 28, 1996).

Shortly thereafter, the Department of Justice prepared a report discussing the "serious First Amendment problems" raised by § 842(p)(2)(B), which lacked an intent requirement. *See* United States Dep't of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which its Dissemination is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent With the First Amendment to the United States Constitution*, 47-48 (1997). The DOJ Report cautioned that "a 'facilitation through speech' prohibition without an 'intent' requirement would raise serious First Amendment problems," because "the First Amendment traditionally has been understood to prohibit the use of the criminal or tort law to punish the dissemination of lawfully

3

obtained factual information absent an impermissible purpose for such dissemination[.]" *Id.*

Despite this warning, Congress enacted the law without an intent requirement. The resulting statute makes it "unlawful" to either "teach or demonstrate to any person the making or use of an explosive, a destructive device, or a weapon of mass destruction," or "to distribute to any person . . . information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction," if the speaker "know[s] that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence." Pub. L. No. 104-132, tit. VI, § 603, 110 Stat. 1214, 1289 (1996).

**B.    Factual Background and Prior Proceedings**

Christopher Arthur was indicted under 18 U.S.C. § 842(p)(2)(B). He moved to dismiss the indictment, raising a First Amendment challenge to § 842(p)(2)(B). Arthur contended that the statute was unconstitutionally overbroad. The District Court rejected the argument and Arthur proceeded to trial, where he was convicted by a jury. *See United States v. Arthur*, No. 7:22-CR-5-D, 2023 WL 12195529 (E.D.N.C. Jan. 17, 2023).

Following his conviction, Arthur appealed the District Court's decision on his facial First Amendment challenge. In a divided opinion, the Panel affirmed. *United*

4

*States v. Arthur*, ___ F.4th ___, 2025 WL 3466639 (4th Cir. Dec. 3, 2025). The Panel majority explained that it rejected Arthur's overbreadth challenge because, in its view, "§ 842(p)(2)(B) falls within the speech integral to criminal conduct exception." Slip Op. 16. The Panel reasoned that "one who teaches another how to make 'explosive[s],' 'destructive device[s],' or 'weapon[s] of mass destruction,' while *knowing* that the recipient of that information intends to use it to commit a federal crime of violence, has effectively facilitated the commission of the other's crime." *Id.* It reached that conclusion even while acknowledging that the statute does not require the speaker to have "specific intent to commit an underlying crime." *Id.* at 21. In the Panel's view, "Arthur overstates the import of" criminal intent, and it was enough for the statute to "require[] knowledge that *the recipient* of the bombmaking information *intends* to commit a crime." *Id.* at 18 (emphasis added).

Judge Gregory dissented. He would have reversed the district court's decision and found § 842(p)(2)(B) unconstitutionally overbroad because of "the novelty of criminalizing speech when the speaker lacked specific intent to commit a crime." *Id.* at 33. Judge Gregory disagreed that a *mens rea* of knowledge is sufficiently limiting to render the statute constitutional, because "[k]nowledge is too readily proven during prosecution to sufficiently winnow this broad statute." *Id.* at 36. Moreover, as he explained, "the reality of the statutory language is that it applies to far more common and less threatening items" than bombs, including "gasoline" and "methane

5

gas." *Id.* at 34. Worse, "[t]he breadth of these definitions is exacerbated by the breadth of the rest" of the statute, which "is hardly cabined to those who communicate bombmaking instructions," and instead could extend to "simple physics topics . . . since the concepts of potential and kinetic energy easily 'pertain[ ] to' incendiary applications." *Id.* at 35. Judge Gregory concluded that "the reduced *mens rea* requirement, in combination with the broad language of the statute, creates an unacceptably high risk of chilling protected expression." *Id.* at 39.

## ARGUMENT

### I. THE PANEL DECISION IS WRONG AND REHEARING IS WARRANTED TO CORRECT THE PANEL'S NOVEL AND DANGEROUS ERROR.

The government does not dispute that § 842(p)(2)(B) is a content-based restriction on speech. *See* Govt. Br. 15. Therefore—before even taking into account its lack of an intent requirement—the statute presumptively violates the First Amendment. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). The Panel nevertheless rejected Arthur's overbreadth challenge to § 842(p)(2)(B) because, in the majority's view, the statute "falls within the speech integral to criminal conduct exception," making it "unprotected speech," even though the statute does not require "some sort of specific intent to commit an underlying crime." Slip Op. 6-8. That view is novel and wrong. Section 842(p)(2)(B) is facially overbroad because it substitutes mere knowledge of another's criminal intent for the criminal intent of the

6

speaker. The Panel attempted to justify the result in this case through an analogy to aiding and abetting liability, but even there—as with all other criminal liability that focuses on the effect of a speaker on a listener—aiding and abetting liability requires the speaker to have criminal intent. In discarding intent, the Panel broke with Supreme Court precedent. Rehearing is warranted to correct that error. *See* Fed. R. App. P. 40(b)(2)(B).

**A. The Panel Decision Conflicts With Supreme Court Precedent Requiring Criminal Intent To Exempt Speech From First Amendment Protection.**

Although the First Amendment does not protect speech integral to criminal conduct, *Giboney*, 336 U.S. at 498, the Supreme Court has held that "speech integral to criminal conduct" is unprotected by the First Amendment because it is, by definition, "[s]peech *intended* to bring about a particular unlawful act." *Hansen*, 599 U.S. at 783 (emphasis added). Consider conspiracy and solicitation, two canonical examples of such speech that is exempt from First Amendment protection. To secure a conspiracy conviction, the government must prove the defendant "reach[ed] an agreement with the '*specific intent* that the underlying crime be committed' by some member of the conspiracy." *Ocasio v. United States*, 578 U.S. 282, 288 (2016) (emphasis altered and citation omitted). "In other words, each conspirator must have *specifically intended* that some conspirator commit each element of the substantive offense." *Id.* at 292 (emphasis altered). Similarly, because "[c]riminal solicitation is

7

the *intentional* encouragement of an unlawful act," the government must prove "that the defendant *specifically intend[ed]* that a particular act be carried out." *Hansen*, 599 U.S. at 771 (emphasis added and citation omitted).

The Supreme Court recently emphasized this intent requirement in *Hansen*. The statute at issue in that case prohibited "encourag[ing] or induc[ing] illegal immigration." *Id.* at 766. In considering whether that prohibition was facially overbroad, the Supreme Court reasoned that "Congress used 'encourage' and 'induce' as terms of art referring to criminal solicitation and facilitation"—historical categories of speech integral to criminal conduct. *Id.* at 771. And critically, "[b]oth [encourage and induce] require an intent to bring about a particular unlawful act." *Id.* at 771. Based on that understanding of the requisite *mens rea*, the Supreme Court concluded that the prohibited speech "has no social value; therefore, it is unprotected." *Id.* at 783.

In *United States v. Williams*, 553 U.S. 285 (2008), the Court put an even finer point on it. That case explained that intent was central to the Court's conclusion that the federal statute criminalizing the promotion of child pornography was constitutionally permissible. The relevant statutory term, "promotes," imported an "intent" requirement into the statute. *Id.* at 300. The Court acknowledged that the First Amendment would protect the statements, "I believe that child pornography should be legal" or "I encourage you to obtain child pornography," but concluded

8

that the statute at issue in that case prohibited more than mere encouragement. The statute criminalized "the recommendation of a particular piece of purported child pornography *with the intent of initiating a transfer*." *Id.* (emphasis added); *see also id.* at 309 ("the heightened scienter requirements" described in the majority opinion "properly . . . constrain the reach of the statute") (Stevens, J., concurring). Section 842(p)(2)(B) has no such requirement.

### B. Section 842(p)(2)(B) Is Facially Overbroad Because The Statute Prohibits A Substantial Amount Of Protected Speech As Compared To Its Legitimate Scope.

Section 842(p)(2)(B) sweeps in a substantial amount of protected speech, particularly given courts' willingness to infer knowledge from mundane facts. Under the statute's plain meaning, all the following are prohibited:

- A contractor uses a controlled explosion to clear a roadway, knowing that the protestors across the street are willing to destroy government property to prevent further development, *cf., e.g.*, *Adderley v. State of Fla.*, 385 U.S. 39, 46-47 (1966) (finding that jury properly inferred malicious intent to trespass based on protestors' mere presence on jail grounds).
- A drill sergeant provides military training to new recruits at bootcamp, knowing that one of his trainees is an "Oath Keeper" who intends to travel to the Capitol on January 6, *cf., e.g.*, *United States v. Huff*, 630 F. App'x 471, 479 (6th Cir. 2015) (finding a police officer had reasonable suspicion for a traffic stop based on an Oath Keepers car decal and intel that an uprising might occur at a nearby courthouse).
- A physics professor teaches a class on thermodynamics, noting that one of her students wears a shirt that says "by any means necessary" and intends to join a protest at a federal building after class, *cf., e.g.*, *United*

9

*States v. Dellinger*, 472 F.2d 340, 400 (7th Cir. 1972) (finding that a jury could infer "intent to cause violence" by a demonstrator's statement that a march should make its way to the final destination "by any means necessary").

- A father teaches his son how to set up road flares if he is stranded near a busy road, knowing that his son is planning a senior prank involving flare guns at his high school, *cf.*, *e.g.*, *United States v. Boyd*, 924 F.2d 945, 946 (9th Cir. 1991) (finding that a road flare constitutes a "dangerous weapon" for sentencing enhancement purposes);

- A veteran talks about her traumatic combat experiences in group therapy, knowing that one of the other patients is struggling with violent thoughts, *cf., e.g.*, *Beaty v. Schriro*, 509 F.3d 994, 998 (9th Cir. 2007) (finding that therapist had knowledge of defendant's intent to commit murder after he voluntarily revealed violent conduct during therapy session).

- A mechanic explains engine combustion on a DIY car repair podcast, knowing that one of his listeners posted social media messages threatening to mow down a police officer once his car was fixed, *cf., e.g.*, *United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) (finding that police officers had knowledge to suspect defendant intended to commit violent crime while driving based on threatening Facebook messages).

- A book publisher intending to print an instruction manual for fireworks displays receives an anonymous letter threatening to use the book to build an explosive device, *cf., e.g.*, *Illinois v. Gates*, 462 U.S. 213 (1983) (finding that, once corroborated, an anonymous tip lacking indications of veracity and a basis of knowledge nevertheless amounted to probable cause of the crimes detailed in the letter); *Round v. Boeing N. Am. Servs.*, No. 98-2344, 1999 WL 417452, at *4 (4th Cir. June 23, 1999) (similar).

We could go on. But as each of these examples illustrates, § 842(p)(2)(B) encompasses the innocent conduct of conveying factual information that might help someone to commit a crime—even if the speaker does not intend that result. For that

10

reason, § 842(p)(2)(B) sweeps in a substantial amount of protected speech.

Worse, "a substantial number of [§ 842(p)(2)(B)'s] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," because § 842(p)(2)(B) lacks a legitimate scope. *United States v. Stevens*, 559 U.S. 460, 472-473 (2010) (citation omitted). Because the statute lacks an intent requirement, *none* of the speech that the statute covers can be criminalized and *all* of the speech covered by the statute is constitutionally protected. *See supra* at 7-9. By contrast, the instances of solicitation or aiding and abetting that would ordinarily be carved out as acceptable in an overbreadth analysis are not encompassed by § 842(p)(2)(B).

Nor can the courts read an intent requirement into the statute to capture solicitation or aiding and abetting; "a limiting construction on a statute" is available "only if it is 'readily susceptible' to such a construction," *Stevens*, 559 U.S. at 481. Section 842(p)(2)(B) is not so susceptible because the subsection immediately preceding it already covers such intentional conduct. Section 842(p)(2)(A) mirrors § 842(p)(2)(B) but requires a higher *mens rea* of "*intent* that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence[.]" 18 U.S.C. § 842(p)(2)(A) (emphasis added); *see also United States v. Coronado*, 461 F. Supp. 2d 1209, 1213 (S.D. Cal. 2006) (rejecting facial overbreadth challenge to § 842(p)(2)(A) and emphasizing that

11

"[i]t is only when the teaching or demonstration of a destructive device is coupled with specific intent to commit a federal crime of violence that an individual runs afoul of the statute"). Saving § 842(p)(2)(B) with a limited construction is therefore both unnecessary and impossible.

**C. The Statute Cannot Be Construed As An Aiding And Abetting Law.**

Contrary to the Panel's contentions, *see* Slip Op. 18-19, Section 842(p)(2)(B) cannot be construed as an aiding-and-abetting statute because it does not include the essential elements of those crimes. Most notably, aiding and abetting requires that the defendant intend that the crime she is assisting be carried out. *See, e.g.*, *Rosemond v. United States*, 572 U.S. 65, 76 (2014). The DOJ's Criminal Resource Manual states that an element of aiding and abetting is a "specific intent to facilitate the commission of a crime by another." U.S. Dep't of Justice, *Criminal Resource Manual* § 2474, *Elements of Aiding and Abetting*, https://perma.cc/ZK2V-N4MZ (last visited Dec. 17, 2025).

But the absence of an intent requirement is *not* "the only real difference between aiding and abetting, on the one hand, and the conduct proscribed by § 842(p)(2)(B), on the other." Slip Op. 18. Section 842(p)(2)(B) also differs from traditional aiding-and-abetting liability in that it makes no attempt to distinguish between the general distribution of information and targeted solicitation of a specific crime. The First Amendment demands that line. As the Supreme Court noted in

12

*Williams*, the First Amendment protects the statement, "I encourage you to obtain child pornography," even as it permits the government to prohibit "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer." *Williams*, 553 U.S. at 300.

Section 842(p)(2)(B) also differs from traditional aiding-and-abetting liability with respect to the result. Aiding and abetting requires that the principal commit a criminal act. *See Rosemond*, 572 U.S. at 70 (noting that the "centuries-old view of culpability" requires that the principal "complete its commission"). Section 842(p)(2)(B), by contrast, does not require that any crime occur.

In sum, § 842(p)(2)(B) lacks at least three elements required for the crime of aiding and abetting. This is not "a distinction without a difference." Slip Op. 18.

## II. THE PANEL DECISION CREATES AN INTRA- AND INTER-CIRCUIT CONFLICT AND REHEARING IS WARRANTED TO RESTORE UNIFORMITY IN THE COURTS OF APPEALS.

This Court should grant rehearing en banc for another reason: The Panel decision creates a conflict with this Court's precedent and the precedent of this Court's sister circuits with respect to the intent requirement. *See* Fed. R. App. P. 40(b)(2)(A), (C).

### A. The Panel Decision Conflicts With This Court's Precedent Regarding The Necessity of Intent.

This Court's decision in *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233 (4th

13

Cir. 1997), illustrates the key role that intent once played in this Court's assessment of the constitutionality of attaching liability to speech. In holding that the publisher of a book entitled "Hit Man: A Technical Manual for Independent Contractors" might be held liable in a wrongful death action, the *Rice* Court carefully limited its holding to the stipulated facts before it—namely, that the defendant "*not only knew* that its instructions might be used by murderers, *but that it actually intended* to provide assistance to murderers and would-be murderers which would be used by them 'upon receipt,' and that it in fact assisted [the murderer] in particular in the commission of the murders [at issue]." *Id.* at 242 (emphases added). And the Court made clear that a lesser *mens rea* would not suffice. *See id.* at 243 (speech not protected where it had "specific purpose of assisting and encouraging commission of" murder); *id.* at 266 (court assumes "that liability could not be imposed in these circumstances on a finding of mere foreseeability or knowledge that the instructions might be misused for a criminal purpose"). Section 842(p)(2)(B) lacks that heightened *mens rea*, making the Panel decision impossible to reconcile with *Rice*.

**B. The Panel Decision Conflicts With Decisions Of Other Federal Courts Of Appeals.**

This Court's sister circuits have—as this Court once did in *Rice*—acknowledged that, for speech to be integral to unlawful conduct, the speaker must have acted with specific intent to commit the unlawful predicate conduct.

14

For example, the Ninth Circuit held that a First Amendment instruction was necessary in a criminal case charging a defendant with aiding and abetting violations of tax law, because the jury had to find that the defendant's speech *intended* to advance unlawful conduct for the speech to be unprotected. *See United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) (Kennedy, J.). The court explained that speech is not protected by the First Amendment "if the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *Id.; see also Friend*, 61 F.4th at 89; *cf. United States v. Rundo*, 990 F.3d 709, 719-720 (9th Cir. 2021) ("Simply put, knowing that some might choose to become violent is not at all the same as intending that they do so.").

Similarly, the Seventh Circuit found that in a solicitation case—another traditional example of a crime to which the "speech integral to criminal conduct" exception applies—a defendant could not be successfully prosecuted absent a showing of intent. *See United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010). In *White*, the Seventh Circuit held that "whether or not the First Amendment protects White's right to [the speech at issue] first turns on his intent in posting that information." *Id.* at 961. As a result, "[t]he government has the burden to prove, beyond a reasonable doubt, that White intended, through his posting," to "cause harm." *Id.* at 962.

15

## III.    OTHER FACTORS FAVOR GRANTING FURTHER REVIEW.

Rehearing is also warranted because the question here is exceptionally important. *See* Fed. R. App. P. 40(b)(2)(D). The Panel decision risks criminalizing an entirely new category of speech: innocent speech that is misused by a third party. And it risks chilling speech by making speakers steer well clear of any potential unlawful zone. *See* Slip Op. 39 (Gregory, J., dissenting) (citing *Counterman v. Colorado*, 600 U.S. 66, 75 (2023)). Moreover, this case is an ideal vehicle for en banc review because no material facts are in dispute. The only question remaining in this case is whether mere knowledge of another's criminal intent is sufficient to support a prohibition on otherwise protected speech under the "speech integral to criminal conduct" exception. If the majority erred in its answer to that question—as the Supreme Court, other courts, and one member of this Court would conclude— then its decision must be reversed.

## CONCLUSION

For all these reasons, this Court should grant rehearing en banc.

December 17, 2025                                    Respectfully submitted,

                                    /s/ Jo-Ann Tamila Sagar
                                    Jo-Ann Tamila Sagar
                                    HOGAN LOVELLS US LLP
                                    555 Thirteenth Street NW
                                    Washington, DC 20004
                                    (202) 637-5600

16

**CERTIFICATE OF COMPLIANCE**

I hereby certify that pursuant to Circuit Rule 40-1, the attached petition for rehearing en banc complies with the Federal Rule of Appellate Procedure 32(a)(4)-(6) and Local Rule 40(d)(3) and contains the following number of words: 3880.

December 17, 2025

/s/ Jo-Ann Tamila Sagar
Jo-Ann Tamila Sagar
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I filed the foregoing Petition with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


December 17, 2025                              /s/ Jo-Ann Tamila Sagar
                                              Jo-Ann Tamila Sagar
                                              HOGAN LOVELLS US LLP
                                              555 Thirteenth Street NW
                                              Washington, DC 20004
                                              (202) 637-5600