No. 24-4306

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHRISTOPHER CLARK ARTHUR,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of North Carolina
(Hon. James C. Dever, III, No. 7:22-cr-5)

RESPONSE TO PETITION FOR REHEARING EN BANC

W. ELLIS BOYLE
U.S. Attorney for the
Eastern District of North Carolina

JOHN A. EISENBERG
Assistant Attorney General for the
National Security Division

JOSEPH P. MINTA
Appellate Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel.: 202-353-9055
joseph.minta@usdoj.gov

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ....................................................................... 1

REASONS THE PETITION SHOULD BE DENIED ............................. 2

I. The Panel Correctly Concluded That the Statute Is Not
Unconstitutionally Overbroad. .......................................................... 2

    A.    The Statute Does Not Burden a Substantial Amount of
Protected Speech. ......................................................................... 3

    B.    The Statute Legitimately Restricts Speech Integral to
Criminal Conduct. ........................................................................ 7

II. There Is No Inter- or Intra-Circuit Conflict. .................................. 11

    A.    None of the Cases Arthur Cites Addressed Crimes with a
*Mens Rea* Requirement Like That in Section 842(p)(2)(B) ....... 11

    B.    Unlike the Panel Decision, Arthur's Proffered Rule Would
Create a Circuit Conflict. ............................................................ 15

III. The Narrow Question Decided Is Not "Exceptionally
Important." ................................................................................... 17

CONCLUSION ....................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Church of Scientology of Cal. v. Foley,*
640 F. 2d 1335 (D.C. Cir. 1981) ......................................................... 18

*Marquez-Reyes v. Garland,*
36 F.4th 1195 (9th Cir. 2022) ............................................................. 6

*Members of City Council of L.A. v. Taxpayers for Vincent,*
466 U.S. 789 (1984) ............................................................................ 4

*Nat'l Mobilization Comm. to End War in Viet Nam v. Foran,*
411 F.2d 934 (7th Cir. 1969) .............................................................. 16

*Rice v. Paladin Enterprises,*
128 F.3d 233 (4th Cir. 1997) ........................................................ 9, 12, 16

*United States v. Chappell,*
691 F.3d 388 (4th Cir. 2012) .............................................................. 6

*United States v. Chi Mak,*
683 F.3d 1126 (9th Cir. 2012) ............................................................ 15

*United States v. Edler Industries,*
579 F.2d 516 (9th Cir. 1978) .............................................................. 15

*United States v. Freeman,*
761 F.2d 549 (9th Cir. 1985) .......................................................... 13, 14

*United States v. Hansen,*
599 U.S. 762 (2023) ................................................................. 3, 4, 8, 9, 17

*United States v. Miselis,*
972 F.3d 518 (4th Cir. 2020) .............................................................. 9

*United States v. Pascoe,*
No. 22-cr-88, 2025 WL 492007 (W.D. Ky. Feb. 13, 2025) ..................... 15

*United States v. Stevens,*
559 U.S. 460 (2010) ............................................................................ 7

**Cases (cont'd)** <u>Page(s)</u>

*United States v. White,*
610 F.3d 956 (7th Cir. 2010)..................................................14

*United States v. Williams,*
553 U.S. 285 (2008).............................................................9

*Virginia v. Hicks,*
539 U.S. 113 (2003).............................................................3

**Statutes**

18 U.S.C. § 231(a)(1)..............................................................16

18 U.S.C. § 373(a) .................................................................14

18 U.S.C. § 842(p)(2)(B)..................................................*passim*

Pub. L. No. 94-329, § 212, 90 Stat. 729, 744 (June 30, 1976)................15

**Other Authorities**

U.S. Dep't of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which its Dissemination Is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent with the First Amendment to the United States Constitution* (Apr. 1997), https://books.google.com/books?id=falHAQAAIAAJ ..............................2

# INTRODUCTION

Christopher Arthur taught people how to kill federal agents. In particular, he spent nearly three hours providing detailed explosives instruction to "Buckshot," an FBI confidential informant. He did so knowing that Buckshot wanted this information in order to be "ready" for the return of ATF agents to his house that Arthur agreed was certain to happen. On appeal, Arthur did not dispute that he violated 18 U.S.C. § 842(p)(2)(B) or that his conduct fell outside the protections of the First Amendment. A panel of this Court rejected Arthur's claim that Section 842(p)(2)(B) is so overbroad as to be facially unconstitutional.

Rehearing *en banc* of that decision is unwarranted. The panel was unanimous in its rejection of the claim at the core of Arthur's rehearing petition—that Section 842(p)(2)(B) has no constitutional applications. *See* slip op. at 16, 39. That unanimity confirms that Arthur is wrong to claim that the panel decision conflicts with Supreme Court or Fourth Circuit precedent or the decisions of other courts of appeals. The panel's decision to reject Arthur's facial challenge was both correct and appropriately narrow, reserving any as-applied challenges to this rarely used statute for another day. Arthur's petition should be denied.

1

## REASONS THE PETITION SHOULD BE DENIED

**I.  THE PANEL CORRECTLY CONCLUDED THAT THE STATUTE IS NOT UNCONSTITUTIONALLY OVERBROAD.**

Section 842(p)(2)(B) prohibits teaching bombmaking "to any person" where a defendant "know[s] that such person intends to use the teaching, demonstration, or information for, or in furtherance of, an activity that constitutes a Federal crime of violence." As explained below, Arthur's briefs, oral argument, and now his petition for rehearing *en banc* have repeatedly misconstrued the narrow circumstances in which the statute applies. Properly understood, the statute fully complies with the First Amendment.[1]

---

[1] Arthur's selective quotations (Pet. 3-4) from a Department of Justice report analyzing potential legislation that became Section 842(p)(2)(B) are misleading. The report was not a "warning" to Congress. Rather, its forthright analysis concluded that "such a facilitation prohibition could be constitutional, if drafted narrowly" and described the approach that Congress later enacted as Section 842(p)(2)(B) as the "safest strategy" in drafting such legislation because it is "tailored to particular recipients who are likely to make criminal use of the information." *See* U.S. Dep't of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which its Dissemination Is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent with the First Amendment to the United States Constitution* 48-49 (Apr. 1997), https://books.google.com/books?id=falHAQAAIAAJ.

Arthur does not dispute that to succeed in his facial challenge he bears the burden of "demonstrat[ing] that the statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (internal quotation marks omitted). The panel decision explained that Arthur erred on both sides of this scale. The panel rejected as falling outside the statute Arthur's proffered hypotheticals from his briefing and oral argument that attempted to describe protected speech proscribed by Section 842(p)(2)(B). *See* slip op. at 24-26. Separately, the panel concluded that Section 842(p)(2)(B)'s "plainly legitimate sweep" encompasses speech, like Arthur's, that is integral to criminal conduct. *See id.* at 16-17. Arthur has not identified an error in either conclusion, let alone one requiring rehearing *en banc*.

## A. The Statute Does Not Burden a Substantial Amount of Protected Speech.

"The overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (cleaned up). "[T]he mere fact that one can conceive of some impermissible

3

applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984); *see also Hansen*, 599 U.S. at 770 ("a law's unconstitutional applications must be realistic, not fanciful"). Arthur has repeatedly failed to carry his burden of providing realistic examples of protected speech encompassed by Section 842(p)(2)(B), and his rehearing petition does not change that conclusion.

In his briefs, Arthur described situations where a speaker provided information to someone whose clothing or tattoos suggested a potentially violent nature. *See* Br. 16-17. The government explained that this would not meet the statute's narrowly tailored *mens rea* requirement, which instead demands knowledge that the recipient actually intends to commit a crime of violence. *See* Gov't Br. 23-24. At oral argument, Arthur conceded that these hypotheticals did not demonstrate overbreadth. *See* Oral Arg. at 3:46; slip op. at 24 ("Arthur rightly conceded at argument that they were unpersuasive."); *but cf.* Pet. 1, 9-10 (recycling the example of a student in a physics class wearing a t-shirt with a violent slogan, without acknowledging his previous concession). Instead, he offered new hypotheticals where

internet companies declined to take down previously published information after being informed that someone was using it to plan a crime of violence. *See, e.g.*, Oral Arg. at 4:02-28. The panel decision explained that these hypotheticals failed because at the time the information was provided, the speaker lacked the requisite knowledge. *See* slip op. at 25. Arthur nonetheless repeats the idea with his "book publisher" hypothetical, *see* Pet. 10, without engaging with the panel's analysis.

For the first time, Arthur now posits examples of individuals with known violent intent being provided information "that *might* help someone to commit a crime." Pet. 10 (emphasis added). Again, this conduct falls outside what Section 842(p)(2)(B) prohibits. A conviction under the statute requires that the defendant know that the recipient *intends to use* the provided information for a violent crime, not merely the possibility that they might do so. That close link between the information provided and the violent crime is what makes the speech "integral" to criminal conduct, yet it is lacking from all of Arthur's newly minted hypotheticals. For example, knowledge of "engine combustion" is unnecessary to commit the crime of "mow[ing] down a

police officer" with a car. *See* Pet. 10. Likewise, knowledge of the proper location of road flares after an automobile breakdown would be irrelevant to one's ability to use a flare gun in a violent crime. *See id.* As a result, Section 842(p)(2)(B) does not prohibit the hypothetical instruction Arthur describes.

Because Arthur has failed yet again in his attempts to describe realistic examples of protected speech that the statute prohibits, his facial challenge must fail. *See, e.g.*, *United States v. Chappell*, 691 F.3d 388, 393 (4th Cir. 2012) ("We decline to facially invalidate [a law prohibiting impersonating an officer] just because Chappell can conceive of far-fetched applications involving innocent behavior."). This alone is sufficient basis for the Court to decline to rehear the case *en banc. See, e.g.*, *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1207 (9th Cir. 2022) ("We need not decide whether section 1182(a)(6)(E)(i) reaches *only* unprotected speech. It is enough to say that, to the extent the statute may reach some protected speech, it is not substantially overbroad relative to its legitimate sweep.").

### B. The Statute Legitimately Restricts Speech Integral to Criminal Conduct.

Arthur's efforts to attack the panel's conclusion that Section 842(p)(2)(B) has a large, plainly legitimate scope also fail. The panel concluded that much of the speech encompassed by Section 842(p)(2)(B) is "speech integral to criminal conduct" and therefore falls outside the First Amendment's protection. *See* slip op. at 16. This conclusion was both correct and entirely consistent with the Supreme Court's decisions applying the overbreadth doctrine to other statutes.

"From 1791 to the present . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas," including "speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (cleaned up). Throughout this case, Arthur has repeatedly conceded that Section 842(p)(2)(B) has at least one constitutional application: to his own conduct. *See* Br. 7; Oral Arg. at 5:58 ("[P]erhaps the only constitutional zone of operation of this law is Mr. Arthur's conduct."). The panel was unanimous in its conclusion that Arthur's concession was correct. *See* slip op. at 16 ("The facts in this case illustrate that general point"); slip op. at 39 (Gregory, J.,

7

dissenting) ("[T]he circumstances of Arthur's case demonstrate that this statute has at least some constitutional applications."). All therefore agreed that Arthur's instruction to Buckshot was "speech integral to criminal conduct" that fell outside the First Amendment's protections.

Arthur's rehearing petition, however, takes the more extreme position that "*all* of the speech covered by the statute is constitutionally protected." *See* Pet. 11. Moreover, he now asserts that the contrary conclusion "runs counter to decades of Supreme Court precedent." *Id.* at 1 (emphasis removed). It is no surprise that the panel unanimously rejected this contention, because it is based on a gross overreading of the Supreme Court's cases applying the overbreadth doctrine.

In *Hansen*, the Supreme Court first interpreted the statute at issue to reach conduct akin to conspiracy or solicitation and *then* concluded that it was not facially overbroad. *See* 599 U.S. at 781. The Supreme Court did not purport to define the bounds of the speech-integral-to-criminal-conduct exception. Arthur asserts that the Supreme Court held that speech integral to criminal conduct "by definition" requires criminal intent, Pet. 7, but those words are found nowhere in

8

the opinion. *See id.* at 783. Rather, the Court observed only that the speech proscribed by the statute in question required such an intent.

In *Williams*, the Supreme Court distinguished "between a proposal to engage in illegal activity and the abstract advocacy of illegality," noting that the First Amendment protects only the latter. *United States v. Williams*, 553 U.S. 285, 298-99 (2008). But Section 842(p)(2)(B) does not present the question of when abstract advocacy crosses the line into incitement. As this Court has explained, speech integral to criminal conduct is "a second category of unprotected speech [in addition to incitement] . . . which may be proscribed without regard to whether it's directed and likely to produce imminent lawlessness." *United States v. Miselis*, 972 F.3d 518, 533 (4th Cir. 2020). Thus, the panel correctly concluded (and the dissent did not dispute) that "neither the Supreme Court nor this Court has ever limited this exception [of speech integral to criminal conduct] to only apply where the defendant possesses a specific intent to commit an underlying crime." Slip op. at 21 (citing *Rice v. Paladin Enterprises*, 128 F.3d 233, 248 (4th Cir. 1997)).

Arthur's only other dispute with the panel's description of Section 842(p)(2)(B)'s plainly legitimate sweep is his disagreement with the panel's use of aiding-and-abetting as an analogous example of speech integral to criminal conduct. *See* Pet. 12-13. Initially, the differences between aiding-and-abetting and Section 842(p)(2)(B) highlight the important, if narrow, gap that this statute fills. *Contra* Oral Arg. at 35:42 (defense counsel asserting "the government doesn't need this law"). More importantly, these distinctions have no bearing on the panel decision's analysis of what it means for speech to be "integral" to criminal conduct. *See* slip op. at 16-17. Here, Arthur does not dispute that his instruction was "necessary," *id.* at 16, or that he "taught Buckshot everything he needed to know to create the explosives he desired," *id.* at 17. It is these points that compel the conclusion that Arthur's speech, like other speech encompassed by Section 842(p)(2)(B), is integral to criminal conduct and therefore unprotected by the First Amendment. Because Arthur's petition does nothing to undermine this conclusion, the petition should be denied.

## II. THERE IS NO INTER- OR INTRA-CIRCUIT CONFLICT.

Arthur's claims of an inter- or intra-circuit conflict suffer from the same conceptual flaw as his claims about Supreme Court precedent. He again attempts to turn examples of speech integral to criminal conduct into statements about the outer bounds of the doctrine. No one disputes that many instances of speech integral to criminal conduct involve a shared criminal intent. *See* slip op. at 21 ("It is correct that many of the examples of speech integral to criminal conduct include some sort of specific intent to commit an underlying crime."). But merely collecting additional examples does not show any conflict with the panel's conclusion here. Indeed, as Judge Gregory noted in his dissenting opinion, no prior precedent has addressed the question that this case presents. *See* slip op. at 36. Arthur's attempt to invent a circuit conflict should be rejected.

### A. None of the Cases Arthur Cites Addressed Crimes with a *Mens Rea* Requirement Like That in Section 842(p)(2)(B).

Arthur first asserts (Pet. 13-14) that the panel decision conflicts with this Court's First Amendment analysis in *Rice v. Paladin Enterprises*. But as Arthur notes (at 14), the parties in *Rice* stipulated

11

that the defendant "actually intended to provide assistance to murderers and would-be murderers" through the publication at issue. 128 F.3d at 242. The Court therefore did not need to decide how the First Amendment would apply in the absence of such an intent. Arthur is simply wrong to assert that "the Court made clear that a lesser *mens rea* would not suffice." Pet. 14. Rather, the Court in *Rice* carefully noted that, at most, "the First Amendment may *in some contexts* stand as a bar to the imposition of liability on the basis of mere foreseeability or knowledge that the information one imparts could be misused for an impermissible purpose." 128 F.3d at 247 (emphasis added). Arthur does not argue that this is such a context. Instead, his claim of an intra-circuit conflict is grounded in the false claim that this Court held that in *every* context the First Amendment makes such a demand. *Rice* did not present that question, and the Court did not so hold. *See* slip op. at 21 (rejecting Arthur's reading of *Rice*); *id.* at 36 (Gregory, J., dissenting) (agreeing that "[u]ntil today, this Court has refrained from deciding whether a speaker's mere knowledge of a listener's criminal intent is sufficient to permit civil liability"); *Rice*, 128 F.3d at 248 ("We need not

engage in an extended discussion of the existence or scope of an intent-based limitation today.").

Arthur's claim of a conflict with decisions from the Seventh and Ninth Circuit Courts of Appeals (Pet. 14-15) is also incorrect. In each case, the court addressed the First Amendment's applicability to crimes that required criminal intent. Like *Rice*, neither case required the courts to address the constitutionality of a *mens rea* requirement like that found in Section 842(p)(2)(B).

In *United States v. Freeman*, the Ninth Circuit examined the jury instructions in the trial of a tax protestor who "claim[ed] he did nothing more than advocate tax noncompliance as an abstract idea, or at most as a remote act, and that the First Amendment necessarily bars his prosecution." 761 F.2d 549, 551 (9th Cir. 1985). The Ninth Circuit held that "[i]n light of Freeman's defense and the evidence to support it, an instruction based upon the First Amendment should have been given to the jury." *Id.* at 552. Consistent with the panel's holding here, the Ninth Circuit also held that such an instruction was inappropriate for other counts because, "where speech becomes an integral part of the crime, a First Amendment defense is foreclosed." *Id.* But the premise of the

Ninth Circuit's analysis in both instances was the statutory requirement of willfulness, rather than any supposed constitutional requirement. *See id.* (noting "the crime is one proscribed only if done willfully"). As none of the charges in *Freeman* turned merely on the defendant's knowledge, the Ninth Circuit's decision did not, and could not, conflict with the panel decision here.

The Seventh Circuit's decision in *United States v. White* is no different. There, the Court of Appeals reversed the dismissal of an indictment charging a defendant with solicitation based on a website he created publicizing identifying information about certain jurors and "calling for the use of violence on enemies of white supremacy." 610 F.3d 956, 957 (7th Cir. 2010). The Court concluded that the First Amendment did not immunize such conduct, in part because an element of the crime was "that a defendant intended for another person to commit a violent federal crime." *Id.* at 959 (citing 18 U.S.C. § 373(a)). The court applied the speech-integral-to-criminal-conduct exception, *id.* at 960, but was not presented with a question about that exception's applicability to a statute like the one Arthur violated.

### B. Unlike the Panel Decision, Arthur's Proffered Rule Would Create a Circuit Conflict.

In fact, both courts of appeals that Arthur claims have issued conflicting decisions have upheld other statutes with *mens rea* requirements like that in Section 842(p)(2)(B). In *United States v. Edler Industries*, 579 F.2d 516 (9th Cir. 1978), the Ninth Circuit rejected a First Amendment challenge to a prohibition in the Mutual Security Act of 1954[2] on exporting technical data and other information "know[ing] or hav[ing] reason to know that [the] information is intended for [a] prohibited use," such as weapons development. *Id.* at 520-22. Both the Mutual Security Act and Section 842(p)(2)(B) require knowledge of the recipient's intended use of the provided information; neither require that the provider of the information share that intent.

Likewise, the panel decision (at 19) observed that the Seventh Circuit rejected a facial First Amendment challenge to 18 U.S.C.

---

[2] The provision at issue in *Edler Industries* was repealed in 1976 and replaced with the Arms Export Control Act (AECA), 22 U.S.C. § 2778 *et seq*. *See* Pub. L. No. 94-329, § 212, 90 Stat. 729, 744 (June 30, 1976). Courts have also rejected First Amendment overbreadth challenges to the AECA's similar provision. *See, e.g.*, *United States v. Chi Mak*, 683 F.3d 1126, 1135-36 (9th Cir. 2012); *United States v. Pascoe*, No. 22-cr-88, 2025 WL 492007 (W.D. Ky. Feb. 13, 2025).

§ 231(a)(1), which prohibits providing explosives or firearm instruction "knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder." In other words, this statute has a nearly identical *mens rea* requirement to that in Section 842(p)(2)(B). The Seventh Circuit rejected an overbreadth challenge to this statute because the *mens rea* element "narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription." *Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969) (internal quotation marks omitted). The same is true of Section 842(p)(2)(B). Despite the discussion in the panel opinion, Arthur's petition ignores the *Foran* decision entirely.

Arthur's proposed rule, that speech integral to criminal conduct always requires specific, criminal intent, cannot be reconciled with decisions such as *Edler Industries* or *Foran*. Nor would it be consistent with this Court's statement in *Rice* that "imposition of liability on the basis of mere foreseeability or knowledge" is only prohibited "in some contexts." 128 F.3d at 247. Rather, the Circuit Courts of Appeals are uniform in their conclusion that the speech-integral-to-criminal-conduct

16

exception to the First Amendment is more "flexible" than Arthur's rigid rule. *See* slip op. at 21. Because the panel decision does not create any inter- or intra-circuit conflict, rehearing *en banc* is unnecessary.

### III. THE NARROW QUESTION DECIDED IS NOT "EXCEPTIONALLY IMPORTANT."

Finally, Arthur is wrong in asserting that "the question here is exceptionally important." Pet. 16. Arthur only brought, and the panel only resolved, a claim that Section 842(p)(2)(B) was so overbroad as to be facially unconstitutional. "Invalidation for overbreadth is strong medicine that is not to be casually employed," *Hansen*, 599 U.S. at 770 (cleaned up), and the panel concluded it was inappropriate here. However, the panel decision did not resolve any future as-applied challenges to the statute. *See* slip op. at 12 ("In the absence of such a lopsided ratio, courts must handle unconstitutional applications in the typical manner—case-by-case."). While Arthur is wrong in claiming that the statute prohibits the conduct described in his proffered hypotheticals, if the statute were ever applied to First Amendment-protected conduct in the future, a defendant could still raise an as-applied challenge in his defense.

Such future cases are unlikely to occur, however. Despite the statute's presence in the U.S. Code for more than 25 years, Arthur acknowledges that this is the first appellate decision to address the constitutionality of Section 842(p)(2)(B), *see* Pet. 1, and it appears to be the first appellate decision to address the subsection in any way. But only "truly extraordinary" cases that involve "issue(s) likely to affect many other cases" merit *en banc* review. *Church of Scientology of Cal. v. Foley*, 640 F. 2d 1335, 1340-41 (D.C. Cir. 1981) (Robinson, J., dissenting, joined by Edwards & R.B. Ginsburg, J.J.) (internal quotation marks omitted). The rarely used statute at issue here does not satisfy that demanding standard.

Instead, Arthur asserts that the decision here "risks criminalizing an entirely new category of speech." Pet. 16. To the extent he suggests that the question presented is "exceptionally important" because a future Congress may enact other prohibitions similar to Section 842(p)(2)(B), that speculation is not sufficient to warrant this Court's *en banc* review. As with Arthur's proffered hypotheticals, this Court can address such statutes should they ever be enacted and applied in a future criminal prosecution. Yet, since Section 842(p)(2)(B)'s enactment

18

more than two decades ago, none of Arthur's parade of horribles has appeared, nor have the dissenting judge's concerns about a chilling effect been realized. Arthur is wrong to claim that the panel's decision is anything more than the narrow application of a long-established exception to the First Amendment to a seldom used criminal statute.

## <u>CONCLUSION</u>

For the foregoing reasons, the petition for rehearing *en banc* should be denied.

Respectfully submitted,

W. ELLIS BOYLE  
U.S. Attorney  
for the Eastern District  
of North Carolina

JOHN A. EISENBERG  
Assistant Attorney General for the  
National Security Division

 /s/ Joseph P. Minta  
JOSEPH P. MINTA  
Appellate Attorney  
National Security Division  
U.S. Department of Justice  
950 Pennsylvania Ave. NW  
Washington, DC 20530  
Tel. 202-353-9055  
joseph.minta@usdoj.gov

*Attorneys for the United States*

Dated: January 8, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the 3900-word limit of Fed. R. App. 40(d)(3) because, excluding the parts of the response exempted by Fed. R. App. P. 32(f), this brief contains 3594 words.

I further certify that this response complies with the requirements of Fed. R. App. P. 40(d)(2) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

<u>/s/ Joseph P. Minta</u>
Joseph P. Minta
Attorney for the United States

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2026, a copy of the foregoing Response to Petition for Rehearing En Banc was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joseph P. Minta
Joseph P. Minta
Attorney for the United States